UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH PRINCE,<br><br>    Plaintiff,<br><br>v.<br><br>OREGON MUTUAL INSURANCE COMPANY, an Oregon corporation,<br><br>    Defendant. | Case No. 1:17-cv-00139-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

Pending before the Court are cross Motions for Summary Judgment filed by the parties. Dkts. 31, 38. After holding oral argument on the motions, the Court took the matters under advisement. Upon review, the Court now issues the following decision GRANTING Defendant Oregon Mutual Insurance Company's ("Oregon Mutual") Motion for Summary Judgment (Dkt. 31) and DENING Plaintiff Joseph Prince's Motion for Summary Judgment (Dkt. 38) as moot.

## II. BACKGROUND[1]

On June 28, 2011, Prince was driving his father's truck northbound on State Route 225 in Elko County, Nevada. Prince had been working in Nevada and was returning to his Idaho residence that he shared with his mother.

---

[1] The facts of this case are not in dispute. *See* Joint Statement of Undisputed Facts ("JSOUF"). Dkt. 33.

Courtney Spring was driving his truck southbound on State Route 225 at this same time. Unfortunately, Spring was intoxicated. As Spring approached Prince, he drove his truck across the center line and struck Prince head-on. There is no dispute that Prince was a fault-free victim in this circumstance. Prince sustained serious injuries because of the accident, and was flown to St. Alphonus Regional Medical Center in Boise for treatment. Prince incurred $99,728.32 in medical bills. Furthermore, because of his injuries, Prince could not return to work for approximately 14 months and lost $96,492.64 in wages. Accordingly, Prince's special or out-of-pocket damages in this matter were $196,220.96.

At the time of the accident, Spring had an insurance police with Mid-Century Insurance Company ("Mid-Century"). This policy provided bodily injury liability coverage in the amounts of $100,000 per individual, and $300,000 per occurrence.

Prince's father, Douglas Smith, owned the truck Prince was driving at the time of the accident. Smith had an insurance policy with Farmers Insurance Company of Idaho ("Farmers"). This policy provided underinsured motorist bodily injury ("UIM") coverage of $100,000 per person, and $300,000 per occurrence.[2]

Prince's mother, Ronetta Smith, had an insurance policy ("the Policy" or "Oregon Mutual Policy") with Defendant Oregon Mutual. This Policy likewise provided UIM coverage of $100,000 per person, and $300,000 per occurrence. The Oregon Mutual Policy delineates that any family member who resides in the household is a covered motorist. Therefore, Prince was an insured and permissive user under the Policy.

---

[2] Neither Farmers Insurance nor its policy are involved in this lawsuit.

**MEMORANDUM DECISION AND ORDER - 2**

Prince filed a personal injury action against Spring in Nevada state court. Spring's insurance carrier, Mid-Century, settled with Prince by tendering the bodily injury liability limits of Spring's policy in the amount of $100,000.

The $100,000 was inadequate to compensate Prince for his damages. Accordingly, Prince filed the instant suit against Oregon Mutual. The sole cause of action in Prince's Complaint seeks a declaratory judgment that Oregon Mutual is required to pay Prince $100,000 in UIM coverage under the Policy.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth

the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

The standard applicable to motions for summary judgment do not generally change if the parties file cross motions. *See, e.g.*, *Cady v. Hartford Life & Accidental Ins.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013). However, the Court must evaluate each party's motion on its own merits. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## IV. ANALYSIS

The outcome of the motions for summary judgment in this case is predicated on the Court's determination of two main issues: first, whether Spring is an underinsured motorist as defined under Oregon Mutual's Policy; and second, whether Oregon Mutual's "policy stacking" language is void and unenforceable.

The parties disagree on where the Court should begin its analysis of these two topics. They disagree for good reason. Depending on where the Court chooses to start determines—to a certain extent—whether it even reaches the other issue.

Oregon Mutual urges the Court to begin by taking up the underinsured motorist question. It postures that the language in the Policy is clear: Spring is not an underinsured motorist and summary judgment in its favor is appropriate. In light of the clear language, Oregon Mutual claims the Court will not even need to address policy stacking because that discussion only applies under the "Other Insurance" clause within the UIM section of the Policy and that section is only triggered if UIM coverage exists in the first place. In short, Oregon Mutual's position is that Spring is not underinsured by definition, UIM

coverage is not available to Prince for this incident, and the "Other Insurance" section and policy stacking are irrelevant issues.

Prince, on the other hand, urges the Court to begin by determining whether Oregon Mutual's policy stacking language is void. Prince reasons that if the Court makes that determination first, the question of UIM coverage will automatically follow. If the Court allows policy stacking, then the language in the Policy's "Other Insurance" clause within the UIM section is void, coverages can stack, Spring by definition will be an underinsured motorist, and Prince will have UIM coverage.[3] Conversely, if the Court does not allow policy stacking, then the UIM limits are equal, Spring is not an underinsured motorist, and UIM coverage is not available.

In its discretion, the Court will begin with the issue regarding the UIM definition. Not only was Oregon Mutual's Motion filed first, but the Court's determination on UIM coverage controls to what extent policy stacking even needs to be addressed. As a preface, however, the Court will outline the various provisions of the Policy at issue.

1. **Oregon Mutual Policy**

The Oregon Mutual Policy contains an endorsement that provides UIM coverage, contingent upon several requirements:

> We will pay damages for bodily injury which a covered person shall be legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be sustained by a covered person and be caused by an auto accident arising out of the ownership, maintenance or use of the underinsured motor vehicle.

---

[3] As will be explained, the Court disagrees with Prince that UIM coverage is automatically present if the Court allows policy stacking.

JSOUF, ¶ 23 (Endorsement G0097 AI (1-09)). Simply put, to recover bodily injury damages under the Policy arising out of an accident caused by the operator of an underinsured motor vehicle, the motor vehicle involved must meet the definition of "underinsured motor vehicle." The parties agree on this. The Policy defines "underinsured motor vehicle" as follows:

> [A] land motor vehicle or trailer, the ownership, maintenance, and use of which is insured or bonded for bodily injury liability at the time of the covered auto accident for which the sum of all policies or bonds at the time of the covered auto accident provides at least the amounts required by the applicable law where a covered auto is principally garaged but which sum is less than the applicable limits of liability under this insurance.

JSOUF, ¶ 28 (Endorsement G00097AI (1-09))(emphasis added). The parties also agree that, under this definition, there are essentially three requirements necessary to qualify as an "underinsured motor vehicle." First, the motor vehicle must be a land motor vehicle; second, the motor vehicle must meet applicable legal insurance minimums; and third, the sum of the bodily injury coverage must be "less than the applicable limits of liability under this insurance." *Id.* Here it is undisputed that Spring's truck was a land motor vehicle and that he carried adequate insurance under Nevada law. Thus, the Court will not discuss the first or second requirements further. The third requirement, however, is contested and will be addressed in detail in Section 2 – Underinsured Motorist.

Finally, under the Policy, if a vehicle meets the definition of underinsured, another provision determines how UIM coverage is applied if other insurance coverage is present. This "Other Insurance" section provides:

> If there is other similar insurance on a loss covered by this SECTION, we will pay our proportionate share as our limits of liability bear to the total

> limits of all applicable similar insurance. If this policy and any other policy affording similar insurance apply to the same accident, the maximum limits of liability under all the policies are the highest limits of liability under any one policy. But any insurance we provide with respect to a vehicle you do not own is excess over any other collectible insurance.

JSOUF, ¶ 32 (Endorsement G00097 AI (1-09)). Here too, the parties are divided on the interpretation and enforceability of the language in the Policy. With the applicable contract provisions laid out, the Court will first take up the dispute of whether Spring was an underinsured motorist.

### 2. Underinsured Motorist

As mentioned, the first dispute in this case is whether or not, under the third provision of Oregon Mutual's definition of underinsured motorist, Spring actually qualified as an underinsured motorist. Oregon Mutual asserts that because the limits of Spring's Mid-Century Policy and its own Policy were identical, the coverage was not "less than the applicable limits of liability under this insurance." Prince, on the other hand, believes that the language at issue is ambiguous and should be construed in his favor to allow him to combine his mother and father's UIM limits and then measure that aggregated total against Spring's Policy to determine whether or not he [Spring] was underinsured.

In its Motion for Summary Judgment, Oregon Mutual states that a plain and simple reading of its policy language is all that is necessary for the Court to rule in its favor. A person is an underinsured motorist if the sum of their bodily injury coverage "is less than the applicable limits of liability under this insurance." Spring's Mid-Century Policy provided bodily injury liability coverage in the amount of $100,000 per person,

and $300,000 per occurrence. The Oregon Mutual Policy provided that the applicable limits of liability for UIM coverage are $100,000 per person, and $300,000 per occurrence. Because the Mid-Century Policy limits are not "less than" the Oregon Mutual UIM limits—but are in fact identical—Oregon Mutual asserts that Spring's vehicle does not meet the definition of underinsured motorist and UIM coverage is not available under these circumstances.

In support of this proposition, Oregon Mutual cites to multiple cases in which Idaho Courts found that because the tortfeasor's liability was not less than, but rather equal to, the insured's UIM coverage limits, no underinsured coverage was available. *See Baker v. Farm Bureau Mut. Ins. Co. of Idaho,* 941 P.2d 1316 (Idaho Ct. App. 1997); *Farmers Ins. Co. of Idaho v. Buffa,* 806 P.2d 438 (Idaho 1991); *Nationwide Mut. Ins. Co. v. Scarlett,* 780 P.2d 142 (Idaho 1989). The Court will not undertake a lengthy analysis of these cases because it appears that Prince does not dispute the "less than" language in the underinsured definition; rather, he disputes the final two words of this section: "this insurance." In other words, Prince agrees that in order for the tortfeasor—in this case, Spring—to qualify as underinsured, his (Spring's) limits must be less than the limits of his (Prince's) own limits. Only then can Prince hope to obtain coverage. The dispute then is what limits can be used in calculating the appropriate amount of coverage to determine if Spring's coverage was less than Prince's.

In his Motion for Summary Judgment, while he takes up policy stacking first, Prince argues that the language of the underinsured motorist provision is ambiguous. Prince postures that a reasonable interpretation of the final two words "this insurance"

could mean this *type* of insurance, i.e. UIM coverage, as opposed to "this insurance" meaning the Oregon Mutual insurance contract. In essence, Prince wants to aggregate all UIM coverage available to him ($100,000 from his mother's Oregon Mutual Policy and $100,000 from his father's Farmers Policy) and measure that amount against Spring's $100,000 rather than just the Oregon Mutual Policy amounts. If the Court were to allow this, his $200,000 in coverage would be greater than Spring's $100,000 in coverage and Spring would be an underinsured motorist by definition.

Prince cites to *Gordon v. Three Rivers Agency, Inc.,* an Idaho Court of Appeal case, where interestingly, Oregon Mutual, is one of the defendants. In *Gordon*, the Court was faced with a similar question regarding an ambiguity in the definition of an "underinsured highway vehicle." In *Gordon*, the Court found that Oregon Mutual's definition of "underinsured highway vehicle" was ambiguous and resolved the ambiguity in the insured's favor. 903 P.2d 128, 132 (Idaho Ct. App. 1995). Gordon's policy defined "underinsured highway vehicle" as:

> A highway vehicle with respect to the ownership, maintenance or use of which the sums of the limits of liability under all other bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance.

*Id.* Prince believes the present case is sufficiently similar to *Gordon* and that the Court can make a comparable finding under the present facts. Oregon Mutual, however, points out that even though the language in *Gordon* is identical to the language at issue here, the sentence structure, and connecting phrase, is distinguishable. In *Gordon*, the Idaho Court of Appeals concluded:

> The definition refers to "other bodily injury liability bonds and insurance policies" in the same sentence and immediately prior to the reference to "the applicable limits of liability under this insurance." This juxtaposition of references to bodily injury liability insurance and "applicable limits of liability under this insurance" could lead a reasonable insured to believe that the "applicable limits" means the comparable or equivalent limits under the Gordons' policy, i.e., the bodily injury liability limit.

*Id*. In *Gordon,* the placement of the phrase in question ("less than the applicable limits of liability under this insurance")—in context, and in connection with the phrase before it, ("other bodily injury liability bonds and insurance policies")—is what caused the ambiguity. Before the Court today there is no such connecting phrase. The Court agrees with Oregon Mutual that, although similar, the context of the disputed phrase in *Gordon* is different from the one at issue here and context makes or breaks the issue. That aside, Prince argues the analysis of the *Gordon* court is applicable in this case. The Court disagrees.

In *Gordon,* the Court found that because the phrase "this insurance" was used elsewhere in the policy to collectively refer to all provided coverages, it was not logical to believe (as Oregon Mutual postured) that the same phrase was somehow limiting in the underinsured highway vehicle section. *Id*. at 133. Herein lies the main distinction between *Gordon* and this case. The confusion in the underinsured highway section of the policy at issue in the *Gordon* Policy turned on the fact that "this insurance" could have meant the limits of the UIM section, *or* the other bodily limits of the entire policy. Here, Prince does not think "this insurance" is ambiguous within the policy itself, but only as it relates to other UIM policies in effect (namely his father's). In essence, Prince does not want the Court to look elsewhere in the Oregon Mutual Policy, but outside of the Policy

all together. Therefore, to say the phrase "this insurance" is ambiguous simply based upon the fact that the same phrase was found ambiguous in *Gordon* is not persuasive.

This case is much closer to *Baker v. Farm Bureau Mut. Ins. Co. of Idaho,* 941 P.2d 1316 (Idaho Ct. App. 1997) than to *Gordon*. In *Baker,* the Idaho Court of Appeals stated:

> In *Gordon,* we held that the placement of the phrase "applicable limits of liability under this insurance" next to the phrase "other bodily injury liability" in the UIM coverage was ambiguous and could lead a reasonable insured to believe that the "applicable limits" meant the bodily injury liability limit. We noted that elsewhere in the policy the term "this insurance" was used to refer collectively to all of the provided coverages, which indicated that the term as used in the quoted phrase did not mean only the UIM coverage. By contrast, in subsection three of the Farm Bureau policy, the phrase, "the limit of this coverage," placed subsequently to the phrase "the sum of liability limits," is not ambiguous because "the limit of this coverage" unequivocally refers to the UIM limit. It would be unreasonable to interpret this language as referring to the bodily injury liability limit. Therefore, we conclude that the district court did not err in finding the above provision unambiguous.

*Id.* at 1319. Because the Court finds *Gordon* distinguishable, the question, however, remains: is "this insurance" ambiguous in Oregon Mutual's Policy as it relates to the type of insurance at issue, i.e., UIM coverage.

As already noted, Oregon Mutual cites *Nationwide Mutual Insurance Company v. Scarlett,* 780 P.2d 142 (1989), for the proposition that equivalent coverage does not qualify as "less than" under UIM definitions. Prince also cites to *Scarlett,* and believes that it actually helps him more than Oregon Mutual. In *Scarlett*, the Nationwide policy at issue contained a similar "is less than the limits of this coverage" phrase when defining an underinsured motorist. In that policy, however, a follow-up sentence stated, "[t]hese limits are shown in your policy's declarations." *Id.* at 143. Prince believes *Scarlett*

supports its proposition that Oregon Mutual's definition is vague and that—like in *Scarlett*—Oregon Mutual should have used restrictive language such as "under this insurance **policy,**" "under **these UIM** limits," or "under this insurance **policy's declarations**," rather than just "this insurance" if it had wanted to limit the amount of coverage to just the UIM limits of its own policy. Prince contends that it is just as logical to infer "this *type* of insurance" as to infer "this insurance *policy*," and that he should be allowed to look outside the Policy and use all UIM coverage available to him.

In an effort to illustrate varying interpretations, Prince recognizes "the language may, as Defendant urges, be interpreted to involve only a comparison of the sum of all policies providing the tortfeasor with bodily injury coverage to the UIM limits only in Defendant's policy." Dkt. 37, at 9. This aside, Prince urges the Court to accept his "reasonabl[e], and more fair[]" conclusion, find ambiguity, and construe the Policy in his favor.

The Ninth Circuit has repeatedly stated "a contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Kennewick Irr. Dist. v. United States,* 880 F.2d 1018, 1032 (9th Cir. 1989). However, the Court has also warned that ambiguity does not automatically exist where there is complexity, confusion, or simply because a party can think up a different interpretation. *See, e.g.*, *Crawford v. Ranger Ins. Co.,* 653 F.2d 1248, 1250 (9th Cir. 1981) (finding "mere complexity in an insurance policy does not make it ambiguous."); *Allstate Ins. Co. v. Ellison,* 757 F.2d 1042, 1045 (9th Cir. 1985) (holding the "fact that the parties have two different interpretations of the contract does not make it ambiguous").

Idaho Courts have likewise found that ambiguity exists if the policy is "reasonably subject to conflicting interpretations." *Cherry v. Coregis Ins. Co.,* 204 P.3d 522, 524 (2009). Again, however, the Courts have stressed that there is a thin line between true ambiguity and general confusion or the creation of ambiguity where none exists. *See, e.g.*, *Swanson v. Beco Const. Co.,* 175 P.3d 748, 752 (2007) (holding "A contract is not rendered ambiguous on its face because one of the parties thought that the words used had some meaning that differed from the ordinary meaning of those words"); *Verska v. Saint Alphonsus Reg'l Med. Ctr.,* 265 P.3d 502, 509 (2011) (when referring to statutes, finding "an alternative interpretation that is unreasonable [does] not make it ambiguous").

Here, the Court finds that Prince's interpretation is not reasonable. Prince alleges that Oregon Mutual needs to clarify the clause's meaning with additional words as noted above, but so too would Prince. In order to accept Prince's definition, the Court would need to read in "under this **type of** insurance" or "under **all UIM** insurance." This is not something the Court is willing to do. Oregon Mutual has met its burden. The plain and ordinary meaning and use of the phrase "under this insurance" refers to the Policy itself and does not allow for the aggregation of outside UIM coverage. Prince, on the other hand, has not met his burden in convincing the Court that it should read anything additional into the definition or that any ambiguity exists.

Finally, Prince argues that because the second part of Oregon Mutual's UIM definition allows for the sum of all the tortfeasor's policies to be combined, the Could should likewise allow him to aggregate any applicable UIM policies. In support of this position, Prince cites numerous cases where other jurisdiction have allowed this type of

"same insurance" combining. However, none of the cases come from the within the Ninth Circuit, let alone the District of Idaho. The Court finds these sources unpersuasive.

This final argument dovetails into Prince's Motion for Summary Judgment, wherein he alleges that language in Oregon Mutual's UIM "Other Insurance" Section is void. Because it is void, Price asserts that he can stack his insurance policies in order to determine coverage. Even though the Court finds no ambiguity in the Policy's UIM definition, the Court must briefly address this topic, as Price believes it is so intertwined with the UIM definition, that—had the Court begun its discussion with this topic—he could have prevailed.

The Court finds Prince's argument regarding stacking unconvincing, as it relies upon two false premises. First, the two sections at issue are not connected in the way Prince wants them to be. The "Other Insurance" clause is a part of the UIM Section of the Policy, and does not create coverage in itself, but rather outlines how coverages are coordinated *when UIM coverage already exists.* Here, where no UIM coverage exists, the Court does not even reach the "Other Insurance" delineation of coverage.

Second, had the Court begun with the topic of stacking, and even assuming arguendo that it had found Oregon Mutual's anti-stacking clause void, that result would only allow Prince to stack the policies once he got to the "Other Insurance" Section, which—as was just explained—he never does. It would not, as Prince postures, work in reverse and automatically allow him to stack the policies under the UIM definition just because he could stack them in the "Other Insurance" Section because the Court would

still need to find ambiguity in the UIM definition to allow the combination of UIM policies.[4]

In short, the Court never reaches Prince's Motion for Summary Judgment or the topic of stacking[5] because of its determination regarding UIM coverage. In this case, the Court is not willing to accept Prince's reading of the definition of "this insurance." As a result, the Court does not find any ambiguity and Prince's coverage is not less than Spring's. Spring was, therefore, not an underinsured motorist.

///

///

///

///

///

///

---

[4] The Court understands Prince's position, and it could actually be a valid position (that stacking would apply in both scenarios) were that the precedent in Idaho. As noted, this argument relies on practices and a method for calculating UIM coverage that is not present in the state of Idaho. In the cases Prince cites, the respective state legislatures have adopted certain policies and practices that allow for that "aggregate coverage scheme." If that were the practice in Idaho, *maybe,* the outcome of the one would affect the other, but here that simply is not the case.

[5] Finally, the Court will note that the principle case that Prince relies upon in support of his Motion is *Gearhart v. Mutual of Enumclaw Insurance Company*, 378 P.3d 454 (Idaho 2016). In that case, the Court did find that the anti-stacking provision at issue was void because it was ambiguous. The outcome was that the Plaintiffs got to stack their policies for coverage. Importantly, however, they were able to stack policies because it had already been determined that the other driver was underinsured. So even though *Gearhart* may (and the Court emphasizes may) have resulted in a finding today that Oregon Mutual's anti-stacking language is void, it would not have changed the fact that the Court would still have needed to address the UIM definition to determine if Prince had coverage.

# VI. ORDER

**IT IS HEREBY ORDERED:**

1. Oregon Mutual's Motion for Summary Judgment (Dkt. 31) is GRANTED.

2. Prince's Motion for Summary (Dkt. 38) Judgment is DENIED as MOOT.

3. The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: May 31, 2018

_____
David C. Nye
U.S. District Court Judge